UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.:

## CIVIL ACTION COMPLAINT

Leonard Smith and Susan Elizabeth Smith,
                                                               :

                  Plaintiffs,                    :

                    vs.                         :

American Honda Motor Company, Inc.;
Autozone, Inc.;
Benjamin Moore & Co.;
Borg-Warner Morse Tec Inc. (sued individually and as
    successor-in-interest to Borg-Warner Corporation);
Certainteed Corporation;
CNH Industrial America LLC f/k/a CNH America LLC
    (sued as successor-by-merger to Case Corporation);
DAP Products, Inc.;
Domco Products Texas, Inc. f/k/a Azrock Industries, Inc.;
Eaton Corporation;
Federal-Mogul Asbestos Personal Injury Trust (sued as
    successor to Felt-Products Manufacturing Co.);
Genuine Parts Company a/k/a NAPA (sued individually
    and as RAYLOC BRAKES)
Georgia-Pacific LLC f/k/a Georgia-Pacific Corporation;
Honeywell International, Inc. f/k/a Allied-Signal, Inc.
    (sued as successor-in-interest to Bendix Corporation);
Kawasaki Heavy Industries (U.S.A.), Inc.;
Kawasaki Motor Corp., U.S.A.;
Kawasaki Motors Manufacturing Corp., U.S.A.;
Lowe's Companies, Inc.;
Metropolitan Life Insurance Company;
Navistar, Inc. (sued as successor to International Truck and
    Engine Company f/k/a International Harvestor
    Company);
Nissan North America, Inc.;
Pfizer Inc.;
Pneumo Abex LLC (sued as successor-in-interest to Abex
    Corporation);
Red Devil, Inc.;
The Sherwin-Williams Co.;

**JURY TRIAL DEMANDED**

1

Special Electric Company, Inc. (sued individually and as  :
    alter-ego and successor-in-interest to Special  :
    Materials, Inc. – Wisconsin);  :
Toyota Motor Sales, U.S.A., Inc.;  :
Union Carbide Corporation;  :
Vanderbilt Minerals, LLC (sued as successor-by-merger to  :
    R.T. Vanderbilt Company, Inc.);  :
Yamaha Motor Corporation, U.S.A.,  :
  :
               Defendants.  :
  :

## CIVIL ACTION COMPLAINT

Plaintiffs Leonard Smith and Susan Elizabeth Smith sue the above-named Defendants for compensatory and punitive damages and allege as follows:

### PARTIES

1.     Plaintiffs Leonard Smith and Susan Elizabeth Smith are citizens and residents of the County of Volusia, State of Florida.

2.     Defendant, **AMERICAN HONDA MOTOR COMPANY, INC.**, was and is a company incorporated under the laws of the State of California with its principal place of business in California.  At all times material hereto, AMERICAN HONDA MOTOR COMPANY, INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Honda Motorcycles and friction products. AMERICAN HONDA MOTOR COMPANY, INC. has and does business in the State of North Carolina.

3.     Defendant, **AUTOZONE, INC.**, was and is a company incorporated under the laws of the State of Nevada with its principal place of business in Tennessee.  At all times material hereto, AUTOZONE, INC. developed, manufactured, marketed, distributed and/or sold asbestos-

2

containing products and/or equipment including, but not limited to, asbestos-containing automotive parts. AUTOZONE, INC. has and does business in the State of North Carolina.

4. Defendant, **BENJAMIN MOORE & CO.**, was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times material hereto, BENJAMIN MOORE & CO. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Benjamin Moore Paint. BENJAMIN MOORE & CO. has and does business in the State of North Carolina.

5. Defendant, **BORG-WARNER MORSE TEC INC.** (sued individually and as successor-in-interest to BORG-WARNER CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, BORG-WARNER MORSE TEC INC. (sued individually and as successor-in-interest to BORG-WARNER CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Borg-Warner Clutches. BORG-WARNER MORSE TEC INC. (sued individually and as successor-in-interest to BORG-WARNER CORPORATION) has and does business in the State of North Carolina.

6. Defendant, **CERTAINTEED CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, CERTAINTEED CORPORATION developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Certainteed roofing materials. CERTAINTEED CORPORATION has and does business in the State of North Carolina.

3

7.    Defendant, **CNH INDUSTRIAL AMERICA LLC** f/k/a CNH AMERICA LLC (sued as successor-by-merger to CASE CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. The members of the "LLC" who comprise CNH INDUSTRIAL AMERICA LLC f/k/a CNH AMERICA LLC (sued as successor-by-merger to CASE CORPORATION) are John Elkann who resides in New York City, New York, Sergio Marchionne who resides in Chieti, Italy, and Richard Tobin who resides in Racine, Wisconsin. At all times material hereto, CNH INDUSTRIAL AMERICA LLC f/k/a CNH AMERICA LLC (sued as successor-by-merger to CASE CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Case Loaders and Farmall Farm Equipment. CNH INDUSTRIAL AMERICA LLC f/k/a CNH AMERICA LLC (sued as successor-by-merger to CASE CORPORATION and NEW HOLLAND CONSTRUCTION) has and does business in the State of North Carolina.

8.    Defendant, **DAP PRODUCTS, INC.,** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Maryland. At all times material hereto, DAP PRODUCTS, INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing DAP Caulk. DAP PRODUCTS, INC. has and does business in the State of North Carolina.

9.    Defendant, **DOMCO PRODUCTS TEXAS, INC.** f/k/a AZROCK INDUSTRIES, INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, DOMCO PRODUCTS TEXAS, INC. f/k/a AZROCK INDUSTRIES, INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing

4

Azrock Floor Tiles. DOMCO PRODUCTS TEXAS, INC. f/k/a AZROCK INDUSTRIES, INC. has and does business in the State of North Carolina.

10. Defendant, **EATON CORPORATION**, was and is a company incorporated under the laws of the State of Ohio with its principal place of business in Ohio. At all times material hereto, EATON CORPORATION developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Eaton Truck Brakes. EATON CORPORATION has and does business in the State of North Carolina.

11. Defendant, **FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST** (sued as successor to FELT-PRODUCTS MANUFACTURING CO.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Delaware. At all times material hereto, FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST (sued as successor to FELT-PRODUCTS MANUFACTURING CO.) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Fel-Pro Gaskets. FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST (sued as successor to FELT-PRODUCTS MANUFACTURING CO.) has and does business in the State of North Carolina.

12. Defendant, **GENUINE PARTS COMPANY** a/k/a NAPA (sued individually and as RAYLOC BRAKES), was and is a company incorporated under the laws of the State of Georgia with its principal place of business in Georgia. At all times material hereto, GENUINE PARTS COMPANY a/k/a NAPA (sued individually and as RAYLOC BRAKES) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Rayloc Brakes and other friction products. GENUINE PARTS

5

COMPANY a/k/a NAPA (sued individually and as RAYLOC BRAKES) has and does business in the State of North Carolina.

13. Defendant, **GEORGIA-PACIFIC, LLC** f/k/a GEORGIA-PACIFIC CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Georgia. The members of the "LLC" who comprise GEORGIA-PACIFIC, LLC f/k/a GEORGIA-PACIFIC CORPORATION are James B. Hannan, Jr., who resides in Atlanta, Georgia; Tye G. Darland, who resides in Atlanta, Georgia; William A. Frerking, who resides in Alpharetta, Georgia; David L. Robertson, Sr., who resides in Atlanta, Georgia; and Tyler L. Woolson, who resides in Atlanta, Georgia. At all times material hereto, GEORGIA-PACIFIC, LLC f/k/a GEORGIA-PACIFIC CORPORATION developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Georgia-Pacific Joint Compound. GEORGIA-PACIFIC, LLC f/k/a GEORGIA-PACIFIC CORPORATION has and does business in the State of North Carolina.

14. Defendant, **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Bendix Brakes. HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION) has and does business in the State of North Carolina.

15. Defendant, **KAWASAKI HEAVY INDUSTRIES (U.S.A.), INC.**, was and is a company incorporated under the laws of the State of New York with its principal place of business

6

in New York. At all times material hereto, KAWASAKI HEAVY INDUSTRIES (U.S.A.), INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Kawasaki Motorcycle friction products. KAWASAKI HEAVY INDUSTRIES (U.S.A.), INC. has and does business in the State of North Carolina.

16. Defendant, **KAWASAKI MOTOR CORP., U.S.A.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in California. At all times material hereto, KAWASAKI MOTOR CORP., U.S.A. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Kawasaki Motorcycle friction products. KAWASAKI MOTOR CORP., U.S.A. has and does business in the State of North Carolina.

17. Defendant, **KAWASAKI MOTORS MANUFACTURING CORP., U.S.A.**, was and is a company incorporated under the laws of the State of Nebraska with its principal place of business in Nebraska. At all times material hereto, KAWASAKI MOTORS MANUFACTURING CORP., U.S.A. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Kawasaki Motorcycle friction products. KAWASAKI MOTORS MANUFACTURING CORP., U.S.A. has and does business in the State of North Carolina.

18. Defendant, **LOWE'S COMPANIES, INC.**, was and is a company incorporated under the laws of the State of North Carolina with its principal place of business in North Carolina. At all times material hereto, LOWE'S COMPANIES, INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing building products. LOWE'S COMPANIES, INC. has and does business in the State of North Carolina.

Case 1:14-cv-00943-CCE-JLW   Document 1   Filed 11/10/14   Page 7 of 31

19.     Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York.  At all times material hereto, METROPOLITAN LIFE INSURANCE COMPANY conspired with other asbestos suppliers and asbestos-containing product and/or equipment manufacturers to mislead the public as to the hazards of asbestos.  Defendant METROPOLITAN LIFE INSURANCE COMPANY has and does business in the State of North Carolina.

20.     Defendant, **NAVISTAR, INC.** (sued as successor to INTERNATIONAL TRUCK AND ENGINE COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois.   At all times material hereto, NAVISTAR, INC. (sued as successor to INTERNATIONAL TRUCK AND ENGINE COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Farmall Farm Equipment.  NAVISTAR, INC. (sued as successor to INTERNATIONAL TRUCK AND ENGINE COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY) has and does business in the State of North Carolina.

21.     Defendant, **NISSAN NORTH AMERICA, INC.**, was and is a company incorporated under the laws of the State of California with its principal place of business in Tennessee.   At all times material hereto, NISSAN NORTH AMERICA, INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Nissan/Datsun friction products.   NISSAN NORTH AMERICA, INC. has and does business in the State of North Carolina.

22.     Defendant, **PFIZER, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York.  At all times material hereto,

PFIZER, INC., was a supplier of asbestos-containing talc. PFIZER, INC. has and does business in the State of North Carolina.

23. Defendant, **PNEUMO ABEX LLC** (sued as successor-in-interest to ABEX CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. Pneumo Abex Asbestos Claims Settlement Trust, a resident of Delaware, is the sole member of PNEUMO ABEX LLC (sued as successor-in-interest to ABEX CORPORATION). At all times material hereto, PNEUMO ABEX LLC (sued as successor-in-interest to ABEX CORPORATION) developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Abex Brake Linings. PNEUMO ABEX LLC (sued as successor-in-interest to ABEX CORPORATION) has and does business in the State of North Carolina.

24. Defendant, **RED DEVIL, INC.,** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in Oklahoma. At all times material hereto, RED DEVIL, INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Red Devil Caulk, Sealants, and Fillers. RED DEVIL, INC. has and does business in the State of North Carolina.

25. Defendant, **THE SHERWIN-WILLIAMS CO.,** was and is a company incorporated under the laws of the State of Ohio with its principal place of business in Ohio. At all times material hereto, THE SHERWIN-WILLIAMS CO. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Sherwin-Williams Paint. THE SHERWIN-WILLIAMS CO. has and does business in the State of North Carolina.

9

26.     Defendant, **SPECIAL ELECTRIC COMPANY, INC.** (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC. - WISCONSIN), was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, SPECIAL ELECTRIC COMPANY, INC. (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC. - WISCONSIN) was a supplier of asbestos fibers. SPECIAL ELECTRIC COMPANY, INC. (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC. - WISCONSIN) has and does business in the State of North Carolina.

27.     Defendant, **TOYOTA MOTOR SALES, U.S.A., INC.,** was and is a company incorporated under the laws of the State of California with its principal place of business in California. At all times material hereto, TOYOTA MOTOR SALES, U.S.A., INC. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Toyota friction products. TOYOTA MOTOR SALES, U.S.A., INC. has and does business in the State of North Carolina.

28.     Defendant, **UNION CARBIDE CORPORATION**, was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION was a supplier of asbestos fibers. UNION CARBIDE CORPORATION has and does business in the State of North Carolina.

29.     Defendant, **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R.T. VANDERBILT COMPANY, INC.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. The members of the "LLC" who comprise VANDERBILT MINERALS, LLC (sued as successor-by-merger to R.T. VANDERBILT COMPANY, INC.) are all domiciled in Connecticut. At all times material hereto, VANDERBILT MINERALS, LLC (sued as successor-by-merger to R.T. VANDERBILT

10

COMPANY, INC.) was a supplier of asbestos-containing talc. VANDERBILT MINERALS, LLC (sued as successor-by-merger to R.T. VANDERBILT COMPANY, INC.) has and does business in the State of North Carolina.

30. Defendant, **YAMAHA MOTOR CORPORATION, U.S.A.**, was and is a company incorporated under the laws of the State of California with its principal place of business in California. At all times material hereto, YAMAHA MOTOR CORPORATION, U.S.A. developed, manufactured, marketed, distributed and/or sold asbestos-containing products and/or equipment including, but not limited to, asbestos-containing Yamaha Motorcycle friction products. YAMAHA MOTOR CORPORATION, U.S.A. has and does business in the State of North Carolina.

31. Plaintiffs bring this action for monetary damages as a result of Plaintiff Leonard Smith contracting an asbestos-related disease. Plaintiff Leonard Smith was diagnosed with mesothelioma in September 2014.

32. Plaintiff Leonard Smith was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a) Plaintiff Leonard Smith experienced occupational exposure to asbestos from approximately 1972 to 1979 while working as a laborer renovating homes for his Father, Paul James Smith, in Ramseur, North Carolina, and from approximately 1978 to 1986 while working as a laborer building new homes and performing renovation work for Jim Kirkman and Wayne Smith in Ramseur, North Carolina. As a laborer, Plaintiff Leonard Smith installed Azroc floor tile, mixed, applied, sanded and cleaned-up Georgia-Pacific joint compound, painted the homes with paint manufactured and/or supplied by Benjamin Moore and Sherwin-Williams, applied DAP Caulk and Red Devil Caulk, installed Certainteed roofing materials, and applied Red Devil Sealants and Fillers. Pfizer, Inc. and Vanderbilt Minerals

11

LLC supplied asbestos-containing talc used in the joint compounds, paint, sealants, and caulk. Special Electric Company, Inc. and Union Carbide Corporation supplied the asbestos fibers used in the joint compound. Lowe's Companies, Inc. sold the asbestos-containing building products.

(b)     Plaintiff Leonard Smith experienced exposure to asbestos from approximately 1976 to 1984, intermittently, while working as a mechanic at Gulf Service Station and Exxon (f/k/a Shell) Service Station in Ramseur, North Carolina. While performing automotive repairs and maintenance, Plaintiff Leonard Smith was exposed to asbestos-containing brakes manufactured and/or supplied by Eaton Corporation (Eaton), Honeywell (Bendix), and Genuine Parts (Rayloc and other friction products).

(c)     Plaintiff Leonard Smith experienced exposure to asbestos while performing repairs and maintenance to his personal automobiles and motorcycles from approximately 1977 through the 2000's in Deland and Pierson, Florida, and Ramseur, North Carolina, and on his personal tractors from approximately 1976 to 1986 in Ramseur, North Carolina. Plaintiff Leonard Smith performed engine maintenance on his automobiles requiring the use of asbestos-containing Fel-Pro Gaskets, and asbestos-containing friction products manufactured and/or supplied by Borg-Warner Morse Tec Inc. (Borg Warner), Eaton Corporation, Genuine Parts (Rayloc), Honeywell (Bendix), Nissan/Datsun, Pneumo Abex LLC (Abex), and Toyota Motor Sales, U.S.A., Inc. (Toyota), and asbestos-containing automotive parts supplied by Autozone, Inc. and Toyota Motor Sales, U.S.A., Inc. Plaintiff Leonard Smith worked on motorcycles requiring the use of asbestos-containing products manufactured and/or supplied by American Honda Motor

12

Company, Inc. (Honda), Kawasaki Heavy Industries (U.S.A.), Inc., Kawasaki Motor Corp., U.S.A., Kawasaki Motors Manufacturing Corp., U.S.A., and Yamaha Motor Corporation, U.S.A. Additionally, Plaintiff Leonard Smith performed maintenance on Farmall tractors manufactured or supplied by CNH Industrial America LLC and Navistar, Inc. which required the use of asbestos-containing products.

(d)     Plaintiff Leonard Smith also experienced occupational exposure to asbestos from approximately 1993 to 2000 while working as a laborer for Rice Construction in cities including, but not limited to, Port St. Lucie, Florida. As a laborer, Plaintiff Leonard Smith performed maintenance and repairs on Case loaders, which included working with and around asbestos-containing brakes.

33.     At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants.

34.     At all material times, the Defendants manufactured, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos and/or asbestos-containing products, materials, or equipment either directly or indirectly to Plaintiff Leonard Smith's employers or to such other entities so that these materials were caused to be used at Plaintiff Leonard Smith's job sites.

35.     At all material times, the Defendant Metropolitan Life Insurance Company conspired with other Defendants to disseminate false and misleading medical and/or scientific information regarding the safety of asbestos and demonstrated a clear disregard for the health, safety and welfare of individuals such as Plaintiff Leonard Smith.

13

## JURISDICTION AND VENUE

36.     This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

37.     Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

38.     Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens of the same state as Plaintiffs.  The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

39.     Plaintiffs have satisfied all conditions precedent to the filing of this action.

40.     All of the named Defendants listed on the caption except Lowe's Companies, Inc. are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each Defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in North Carolina.  As mentioned above, Plaintiff Leonard Smith was exposed to various asbestos-containing products while working at various jobs in North Carolina.

14

## FIRST CAUSE OF ACTION
## NEGLIGENCE
## (Against all named Defendants except Metropolitan Life Insurance Company)

41.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

42.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

43.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment came into use by Plaintiff Leonard Smith.

44.     Throughout the course of his employment, Plaintiff Leonard Smith worked with and was exposed to the asbestos and asbestos-containing materials, products or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

45.     During the course and scope of his employment, Plaintiff Leonard Smith was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

46.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to

15

warn Plaintiff Leonard Smith and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

47. Plaintiff Leonard Smith, whose livelihood was dependent upon the work that he did for the various employers, was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that were manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed, such as Plaintiff Leonard Smith, would be required to and would come into contact with and would work in close proximity to said products.

48. Plaintiff Leonard Smith sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff Leonard Smith's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Leonard Smith's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff Leonard Smith would not know of such danger to his health.

49. Plaintiff Leonard Smith's illness and/or disabilities are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous,

16

and highly harmful to Plaintiff Leonard Smith's body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

    (a)    Failed to advise Plaintiff Leonard Smith of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

    (b)    Failed or omitted to provide Plaintiff Leonard Smith with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

    (c)    Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

    (d)    Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

    (e)    Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff Leonard Smith of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

    (f)    Did not recommend methods to improve the work environment;

    (g)    Did not develop alternative products;

    (h)    Continued to use a known cancer-causing product, to-wit: asbestos; and

    (i)    After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform Plaintiff Leonard Smith of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

    50.    Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

    51.    Defendants were negligent and breached their duty of due care to Plaintiff Leonard Smith by taking or failing to take the actions as previously alleged to avoid harm to

17

Plaintiff Leonard Smith and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment at issue in the stream of commerce.

52.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to Plaintiff Leonard Smith were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

53.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff Leonard Smith developed mesothelioma, as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

54.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against all named Defendants except Metropolitan Life Insurance Company)**

55.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

56.     The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

57.     The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff Leonard Smith carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

58.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff Leonard Smith developed an illness, to-wit: mesothelioma.

59.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION
### WILLFUL AND WANTON CONDUCT
**(Against all named Defendants except Metropolitan Life Insurance Company)**

60.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

61.     Plaintiff Leonard Smith and others in his position worked in close proximity to the asbestos and asbestos-related materials used or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff Leonard Smith's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

62.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of Plaintiff Leonard Smith and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants.  As a result, Plaintiff Leonard Smith was severely damaged as is set forth below.

63.     The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff Leonard Smith the knowledge with which to take necessary safety precautions such as periodic x-rays and medical

19

examinations, cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants' intentional, willful, wanton and fraudulent conduct included the following acts and omissions:

(a) failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b) failure to issue recall type letters to prior users;

(c) frustrating the publication of articles and literature from the 1930's through at least 1976;

(d) rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e) delaying the use of and/or providing intentionally inadequate warnings on asbestos products.

64. The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff Leonard Smith and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including Plaintiff Leonard Smith and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff Leonard Smith and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

65. Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of the user or consumer, such as Plaintiff Leonard Smith, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their

20

actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of their products.

### FOURTH CAUSE OF ACTION
### FALSE REPRESENTATION/FRAUD
### (Against all Defendants except Metropolitan Life Insurance Company)

66.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

67.     During, before, and after Plaintiff Leonard Smith's exposure to asbestos products manufactured, installed or otherwise used by Defendants, the Defendants falsely represented facts, including the dangers of asbestos exposure, to Plaintiff Leonard Smith in the particulars alleged in the paragraphs above, while Defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Plaintiff Leonard Smith, and while Defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

68.     The foregoing representations were material conditions precedent to Plaintiff Leonard Smith's continued exposure to asbestos-containing products, and Defendants each intended that Plaintiff Leonard Smith act upon the representations by continuing his exposure to the asbestos products. Plaintiff Leonard Smith was ignorant of the falsity of Defendants' representations and rightfully relied upon the representations.

69.     As a direct and proximate result of Plaintiff Leonard Smith's reliance upon Defendants' false representations and fraud, Plaintiff Leonard Smith suffered injury and damages hereinafter described and seeks recovery for compensatory and punitive damages against these Defendants.

## FIFTH CAUSE OF ACTION
## FAILURE TO WARN
### (Against all named Defendants except Metropolitan Life Insurance Company)

70.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and of exposures to inhalable asbestos.

72.     Defendants had a duty to warn individuals working at Plaintiff Leonard Smith's jobsites including, but not limited to, Plaintiff Leonard Smith, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

73.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants failed to warn and/or inadequately warned Plaintiff Leonard Smith of the dangers including, but not limited to:

(a)     Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with their products which should have been designed to provide to Plaintiff Leonard Smith knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(b)     Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide to Plaintiff Leonard Smith knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c)     Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(d)     Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as Plaintiff Leonard Smith;

22

(e)     Failing to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(f)     Failing to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(g)     Failing to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(h)     Failing to recall their defective product or manufacture a reasonably safer alternative;

(i)     Failing to take adequate precautions and industrial hygiene measures to protect Plaintiff Leonard Smith and exposed workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to Plaintiff Leonard Smith and workers in the facilities at issue that exposure to dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)     Otherwise failing to act reasonably under the totality of the circumstances.

74.     Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment to Plaintiff Leonard Smith's employers, and these products were used by Plaintiff Leonard Smith's various employers. Thus, Defendants had a duty to warn individuals working at Plaintiff Leonard Smith's jobsites including, but not limited to, Plaintiff Leonard Smith, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment.

75.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in failing to provide adequate

23

warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

76.     At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff Leonard Smith.  In the alternative, after the asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable user, such as Plaintiff Leonard Smith, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

77.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused Plaintiff Leonard Smith to develop mesothelioma as a consequence of which he was injured and damaged, and Plaintiffs hereby make a claim for damages from the Defendants jointly and severally.

78.     As a result of the Defendants' failure to warn, Plaintiff Leonard Smith suffered the injuries, illnesses, and/or damages hereinafter alleged.

### SIXTH CAUSE OF ACTION
### CONSPIRACY AND PUNITIVE DAMAGES
#### (Against Metropolitan Life Insurance Company Only)

79.     Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff Leonard Smith was exposed, and such assistance by METROPOLITAN LIFE aided and

24

abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff Leonard Smith's illness, injuries, and/or disabilities.

80. In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

81. Plaintiff Leonard Smith unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which METROPOLITAN LIFE published in leading medical journals.

82. As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Leonard Smith from asbestos exposure was increased, and (ii) Plaintiff Leonard Smith suffered the injuries previously described.

83. In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Leonard Smith. Plaintiffs seek compensatory and punitive damages against METROPOLITAN LIFE as a result.

## DAMAGES
## LOSS OF CONSORTIUM

84.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

85.     Plaintiffs Leonard Smith and Susan Elizabeth Smith were married in North Carolina on June 28, 1986, and have remained married at all times material hereto.

86.     As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff Leonard Smith, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse, Susan Elizabeth Smith, has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and, therefore, Plaintiff-Spouse Susan Elizabeth Smith is entitled to damages for her loss of consortium, both past and future.

## COMPENSATORY AND PUNITIVE DAMAGES

87.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

88.     As a result of the above-alleged conduct of the Defendants, Plaintiff Leonard Smith developed mesothelioma, as a consequence of which, he has been damaged as follows:

(a)     hospital and medical expenses incidental to Plaintiff Leonard Smith's illness;

(b)     loss of earnings and future earning power of Plaintiff Leonard Smith;

(e)     loss of Plaintiff Leonard Smith's general health, strength, and vitality;

(c)     loss of pecuniary contributions to the heirs of Plaintiff Leonard Smith;

(d)     loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Leonard Smith;

26

(e)  future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Leonard Smith;

(f)  pain and suffering of Plaintiff Leonard Smith;

(g)  all other damages recoverable under said Act.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty and willful, wanton, fraudulent and malicious conduct as alleged herein proximately caused by the fault of the Defendants.  Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000, plus interest as provided by law and the costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 10th day of November, 2014.

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com

27

# CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed the document to the following non CM/ECF participants:

**AMERICAN HONDA MOTOR COMPANY, INC.**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**AUTOZONE, INC.**
The Corporation Trust Company of Nevada
311 S. Division Street
Carson City, Nevada 89703

**BENJAMIN MOORE & CO.**
Corporation Service Company
830 Bear Tavern Road
West Trenton, New Jersey 08628

**BORG-WARNER MORSE TEC INC.** (sued individually and as successor-in-interest to BORG-WARNER CORPORATION)
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

**CERTAINTEED CORPORATION**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**CNH INDUSTRIAL AMERICA LLC** f/k/a CNH AMERICA LLC (sued as successor-by-merger to CASE CORPORATION and NEW HOLLAND CONSTRUCTION)
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**DAP PRODUCTS, INC.**
The Prentice Hall Corporation System, Inc.
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

**DOMCO PRODUCTS TEXAS, INC.** f/k/a AZROCK INDUSTRIES, INC.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

**EATON CORPORATION**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST** (sued as successor to
FELT-PRODUCTS MANUFACTURING CO.)
Wilmington Trust SP Services, Inc.
1105 N. Market Street, #1300
Wilmington, Delaware 19801

**GENUINE PARTS COMPANY** a/k/a NAPA (sued individually and as RAYLOC BRAKES)
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**GEORGIA-PACIFIC LLC** f/k/a GEORGIA-PACIFIC CORPORATION
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued as successor-
in-interest to BENDIX CORPORATION)
Corporation Service Company
327 Hillsborough Street
Raleigh, North Carolina 27603-1725

**KAWASAKI HEAVY INDUSTRIES (U.S.A.), INC.**
29 Wells Avenue, Building 4
Yonkers, New York 10701

**KAWASAKI MOTOR CORP., U.S.A.**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**KAWASAKI MOTORS MANUFACTURING CORP., U.S.A.**
CT Corporation System
5601 South 59th Street

29

Lincoln, Nebraska 68516

**LOWE'S COMPANIES, INC.**
Corporation Service Company
327 Hillsborough Street
Raleigh, North Carolina 27603-1725

**METROPOLITAN LIFE INSURANCE COMPANY**
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801
**NAVISTAR, INC.** (sued as successor to INTERNATIONAL TRUCK AND ENGINE
COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY)
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**NISSAN NORTH AMERICA, INC.**
LexisNexis Document Solutions Inc.
327 Hillsborough Street
Raleigh, North Carolina 27603-1725

**PFIZER INC.**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**PNEUMO ABEX LLC** (sued as successor-in-interest to ABEX CORPORATION)
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

**RED DEVIL, INC.**
c/o Legal Department
1437 S. Boulder Avenue, Suite 750
Tulsa, Oklahoma 74119

**THE SHERWIN-WILLIAMS CO.**
Corporation Service Company
327 Hillsborough Street
Raleigh, North Carolina 27603-1725

**SPECIAL ELECTRIC COMPANY, INC.** (sued individually and as alter-ego and successor-in-interest to SPECIAL MATERIALS, INC. - WISCONSIN)
CT Corporation System
8040 Excelsior Drive, Suite 200

30

Madison, Wisconsin 53717

**TOYOTA MOTOR SALES, U.S.A., INC.**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

**UNION CARBIDE CORPORATION**
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601
**VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R.T. VANDERBILT
COMPANY, INC.)
Corporation Service Company
327 Hillsborough Street
Raleigh, North Carolina 27603-1725

**YAMAHA MOTOR CORPORATION, U.S.A.**
Corporation Service Company
327 Hillsborough Street
Raleigh, North Carolina 27603-1725

Respectfully submitted,

/s/Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC 27401
336-333-2244
jwblack@wardblacklaw.com

31